Mr. Strach, when you're ready, we're ready. Thank you, Your Honor. May it please the court, Jack Strauch on behalf of the defendant's appellants. The district court in this case rested its decision upon the mistaken conclusion that evaluation of the Navy's alleged comparative negligence would simply require the jury to consider what the court called a safety-related question. Let me ask you this before you get into the merits of this. Yes. Is this a final appealable order? I believe that it is, Your Honor, under the collateral order doctrine. If we follow the D.C. Circuit and the Seventh Circuit, though, and their analysis seems pretty sound to me, wouldn't we have to dismiss this appeal? No. The court has granted permission to appeal under 1292B. Both the district court did and then this court granted that permission and its discretion, which I think was a wise decision given the factors set in our briefing on that. Of course, that was an administrative panel. That's fine, but it's subject to review by us. I understand. And I want to follow up on that question since we're off on it. You say in support of the 1292B certification under McFarland, the facts are uncontested and undisputed. But you say in the fact session the Navy had substantial responsibility for training and testing the T-39N pilots on, among other things, emergency procedures and preparedness, etc. By contrast, the other side asserts that the Navy was not responsible for the training. That's a contested fact. I understand, Your Honor. What is not contested are the facts that give rise to the political question issue. That is, the court does not need to resolve factual disputes here. That's a fact that underlies the political question issue. Who's responsible? If the Navy had no responsibility, then obviously it's no problem with political questions. There is not a legitimate factual dispute about whether the Navy had responsibility for training. The Navy manuals that are in the record make it abundantly clear that the Navy was responsible for reviewing the training program every single year. The government flight representative was responsible for reviewing and auditing the training program. You're arguing the facts. That doesn't make them uncontested. They are not legitimately contested. Put it that way. Everybody who argues factual disputes before us says the other side is wrong. Therefore, the facts are not actually disputed or contested because they're so one-sided. I don't necessarily agree with the court on that where there are Navy manuals in the record that plainly state the Navy's responsibility for training. Certainly no question about the Navy's responsibility for selecting the aircraft. Certainly no dispute about the Navy's responsibility for the decision to fly at a tactical speed, at a tactical altitude, in a business jet. Isn't that saying that at the district court level they might agree with your presentation of the facts, but they are in fact contested? There may not be a valid – you might win on it is what you're saying. My evidence is stronger, but that doesn't mean that the other side is not contesting it, which is what's underlying the 1292B. No, the other side is not contesting that the Navy selected this aircraft. Let me try to clarify your position. You're arguing the historical facts, the who, what, when, where, and why facts are not contested. But then again, the responsibility is a mixed question of law and fact, and that is contested. What was the ultimate cause of the crash is contested. Everything having to do with the Navy's responsibility and the Navy's decision making is not contested. The historical facts may not be contested, but the ultimate mixed question of fact and law as to the Navy's responsibility is questioned. That's not the political question issue that implicitly the district court certified to us. See the distinction I'm making? I do not. The district court certified to us it would have been more helpful had the district court expressed it. The failure to explicitly state the question is something we can take into consideration in the 1292B discretion. But read best for you and for the district court. The issue it certified to us is if the Navy is responsible for training and procedures and design of all that, is this a political question? Does the political question doctrine apply? That assumes the if clause, if the Navy is responsible. That's a mixed question of law and fact, which is outside, well, it's interrelated with the political question, but it's not the same political question. Let me suggest, I understand where the court is going, two things I'd like to suggest. Number one is no one needs to resolve disputed facts in order to assess whether or not a political question exists here that deprives the court of jurisdiction. But we would have to resolve whether the Navy is responsible. I don't agree because I think that is not even contested as to whether the Navy is responsible for this aircraft selection, for the speed, for the altitude, for a number of things that the evidence indicates and the district court below agreed contributed to the crash. I thought there was powerful evidence in this record that this crash was caused by pilot error, by overcompensating this airplane at a speed that he should have known he should have slowed this plane down. And that's what caused the tail when he didn't do that and he overcompensated to fall apart. Isn't that what the record shows in this case? That's what plaintiff's experts contend in this case. The Navy and defendant's experts contend otherwise. The time between the malfunction of the yaw damper and the tail breaking off was less than two seconds. It's in the record 178-8, page 3. Less than two seconds. The Navy described the pilot's response as a normal response to the yaw damper malfunction. Defendant's experts described the response as exactly what a good experienced pilot would be expected to do. Plaintiff's experts, one of whom is in the courtroom today, described it as something different. Understandably, that is a contested fact. But I do not agree that that contested fact needs to be resolved in order to determine whether or not the court would be obligated, under this proportional liability system, to evaluate whether Navy decision making was a proximate cause of the crash. Let me ask you one last question about jurisdiction. Assuming that we were to dismiss this appeal for lack of jurisdiction, you go back, you have your jury trial, and let's say the plaintiff prevails and you lose. What should preclude you from, when you appeal the final judgment, also appealing the jurisdiction question? Nothing. Nothing. I mean, subject matter jurisdiction can be raised at any time, even after final judgment. I understand that. On jurisdiction, I would point the court to its own McMahon decision, footnote 7, that addressed the collateral order doctrine. And it addressed whether or not the substantial rights at stake, substantial interests at stake, could be adequately reviewed on a post-trial appeal. And in that footnote, the court, again, it was dealing not with political question, but it was dealing with the alleged derivative immunity claim made by the defendant in that case. But the court had this to say. Among the particular values of high order that the Supreme Court has deemed to satisfy the third Cohen factor, honoring the separation of powers is among them, because potential interference with sensitive military judgments implicates separations of powers, presidential has made out a substantial claim of interference with the value of high order, such that its claim satisfies the Supreme Court's test under will. In other words, where we have political question doctrine issues seriously at stake, as I believe we do here, it satisfies the third prong of the collateral order doctrine, meaning you can't have an effective review post-trial appeal once you have already had the judiciary delve into areas that are reserved for the military exclusively. How do you distinguish the Seventh Circuit and D.C. Circuit cases? In my reading of the cases, they never looked at that issue as to whether or not political question in and of itself was enough to satisfy the third Cohen factor. And I've laid out in the briefing further distinguishing of the D.C. Circuit case, the Doe case. Back to the 1292B. Didn't the district court say, I find, although the Navy played a role in approving McDaniel and bore responsibility for warning and instructing pilots and government peculiar requirements, it was not responsible for McDonald's pilot training, end of quote. And don't you argue in your brief that's clearly erroneous? I do. So the facts are disputed. I mean the dispute between you and the district court, for God's sakes. You could, Your Honor, you could set aside the training. Okay? Set aside the training completely and deal only with the selection of the aircraft, the speed, the altitude, which nobody disputes. So now you're asking us to take a case in which the historical facts are the facts, key operative facts are disputed, and try to prune those back so we can do an interlocutory appeal, which may be mooted one way or the other or might be mooted one way or the other by the determination of the disputed fact. That's not what 1292B is about. Well, Your Honor, I think that where we have the serious risk that the judiciary will wade into an area reserved for the political branches, particularly the potential that the jury could announce a finding that the military made negligent decisions about how to train forces for combat, that at the very least we should take a serious look at the collateral order doctrine in Cohen and its third prong. Who's the real party in interest with that concern? The public. No. The government. And they have said what? Well, I think they've said nothing. A rhetorical question. Right, they've said nothing. Y'all didn't move to invite them. Correct. And other circuits have said, well, silence is pregnant. I think that the public is also a real party in interest here. Not when it comes to the political question where the public is represented by, among other things, the Department of Justice and the Navy. And the Navy has been, to say the Navy is aware of this is, as you know, a gross understatement. I mean, I'm ordered to participate in the discovery conference, yet nothing, nothing has been said by the government about a political question. Whether the Navy is aware of this case beyond its discovery obligations, whether the Navy is aware? Wait, wait, wait, wait. You don't think when you get into a discovery dispute with a branch of the Armed Forces that anybody other than the person who gets the, I don't know if it was a subpoena, deposition to subpoena or document subpoena, whatever, no one but the person who got the subpoena knew about it? Having lived through the procedure and the Navy's response to the TUI request, I would find it hard to believe that it ever elevated beyond the JAG officer who handled the TUI request and responded to it. I find it hard to believe that you have a crash of a plane and death down there and the Navy is not aware of it beyond the JAG officer level. And aware of the litigation and aware of any accusations about the Navy's shortcoming. I can't believe that would have happened. But more to the point, why didn't you move for the district court under 527 to invite a statement of interest or non-interest from the government? I did not believe it was necessary. Well, I understand. You do concede, I assume, that if one had been invited and the government had come back and said, we understand your concern, but we don't share it, have at it, that you'd lose on this, wouldn't you? I don't concede that. So you have more standing to assert the government's interest than the government does? I don't think it is solely the government's interest as to whether or not the judiciary goes into areas reserved for the political branches. I believe that there is a public interest. And who represents the public interest on federal issues? Everyone in the federal government, including the court. Really? So I'm supposed to file a response to the statement of interest if the district court issues one? I don't mean to. You know the Department of Justice speaks for the federal government on all legal matters. I understand. But in terms of looking out for that interest, I think the courts do. I think everyone in the federal government does. So even if the government comes in here in response, let's say we issue one invitation, 527 invitation. The government comes in and says, we have absolutely no interest in this. We think you ought to determine it on the merits. That's what the public interest is. Decide it, let the chips fall where they may. We can say, thank you for your statement of non-interest, but we think you're more interested than you realize, and we're going to invoke the political question doctrine. I think what the court can say is I think that there is a public interest in avoiding separation of powers problems. So it's the public interest doctrine. It is, as this court stated in McMahon, in that footnote 7, that there is a particular value of high order in avoiding political question problems that result in a violation of separation of power principles. Okay, we've taken up a bunch of your time, and the first case gave us a bunch of time. So if you've got something else, I'll give you four, at least, I hesitate to say interrupted because I can't prevent my colleagues from interrupting you, but I won't interrupt you for the next four minutes if you've got something you'd like to say. On the merits of the political question issue, the district court rested its opinion upon a belief that the only issue that had to be examined was a safety-related issue. What the district court wrote was the defendant's comparative negligence defense raises a question about whether the Navy failed to anticipate Mr. McDaniel's reaction to the Yaw Damper malfunction that speeds an excess of VA, nothing more and nothing less. I think that misses the issue, and that's an inappropriate effort to box in, to cabin in the issue. As discussed, the Navy itself called Mr. McDaniel's response to the Yaw Damper malfunction a normal attempt to deal with the Yaw Damper. Normal is foreseeable. Experts for the defense indicated this was a normal expected attempt. Given that there is evidence that what Mr. McDaniel did in response to this emergency was expected, was foreseeable, I think the real question becomes, in light of the evidence that was foreseeable, did the Navy make reasonable decisions or negligent decisions about how to operate the mission, about how to train and test and certify the folks in the air crew who are participating in that mission? That's what requires, particularly in this jurisdiction that involves comparative negligence and proportional liability, an evaluation of whether or not, in light of the fact that there is evidence that it was foreseeable, the way the pilot responded, was it reasonable to select the business jet in order to promote certain operational objectives as opposed to using a tactical aircraft? Was it reasonable to fly that business jet at tactical speeds that close to the ground when the consequences were foreseeable based upon the Navy's own admission? And I think that, in my truncated time here, left to speak, summarizes the problem with the district court's approach to suggest that the only decision by the Navy had to do with safety when, to quantify the amount of the Navy's negligence, all of the Navy's decisions need to be examined. That's what happens in a proportional liability system, whether they're 7% responsible or 17% or 70% or none or 100. All of those decisions need to be examined to both determine whether the Navy was negligent and also to quantify any negligence. That reason, I believe, political question bars adjudication in this case. I see you only needed three minutes extra. Thank you, Mr. Child. We'll give you a full five on reply. Mr. Randolph. Good morning. May it please the Court. Chris Randolph. I represent the appellee, Kimberly Nice. I'd first like to speak to the jurisdictional issue. We do not believe this court has appellate jurisdiction under the collateral order doctrine. If the Court has any questions about the application 1292B. I thought you agreed that we had jurisdiction under 1292B. Yes. Okay. You still agree that we have jurisdiction? I agree with him, not necessarily with us, that we have 1292B. Yes, Your Honor. We do agree with that. The defendants do dispute a number of the district court's factual findings. However, we believe that none of the issues that defendants raise as implicating the political question doctrine fall within the narrow category of government decisions that are insulated from judicial review. Regardless of the facts, we can take his statement of the facts as accurate and yours as inaccurate to the extent that it disagrees with him and decide the 1292B certified issue. The answer, I suspect, is no because those facts may determine or at least influence the result of the legal issue. Why doesn't the fact there's disputed facts scuttle the 1292B? We understand defendants to be arguing that the military selections on airplane speed, altitude, and aircraft selection and the input that the Navy had on training do not fall within the category of decisions that are insulated from judicial review. We are not aware of a single decision from any federal court applying the political question doctrine to an accident that occurred in a training exercise in the United States. What do you understand them to be arguing falls within the political question scope? Because I think you all may disagree about the positions and the predictions of the arguments and contentions at trial. We understand them to be asking for a very broad expansion of the political question doctrine. We interpreted their argument, which discusses language in training manuals, to be saying that virtually any decision made by the military that in any way touches on training or combat readiness implicates the political question doctrine. And we believe there's just no legal support for that position. And I might be oversimplifying, but it seemed to me that the argument that they were making was the government or the Navy made the decision about which aircraft, the speed, the altitude. Those decisions, according to them, were part of the reason for this accident. And because if they're going to seek a contributory negligence or the dividing of it, the Navy is responsible for at least part of it. If the Navy hadn't made those decisions and if the Navy hadn't incorrectly made those decisions, then the accident wouldn't have happened. The pilot wouldn't have had to adjust because the yaw damper wouldn't have malfunctioned. So I don't know that they're saying everything comes into it. I think they were being very specific about these decisions that were made to direct the training that were made by the Navy are, in fact, at question. Right. We do understand that to be their argument. Our position is that this court, even if it accepted the defendant's representation of facts, which we dispute, but even assuming that that was accurate, there would be no political question presented. Suppose we determine that it depends on the disputed facts. Well, then we believe that there would be a disputed fact in that case and that the political question doctrine under certain circumstances could turn on the application. But we've wasted a 1292B appeal because we will have decided nothing and we'll send it back contingent on what happens at trial, which we don't know. I just have, myself personally, have some doubts about if this is what we're talking about, 1292B. I mean, suppose, for example, we said, well, it depends. Why don't you all stipulate a binding set of facts? Stipulate it to the detail of everything you've disputed before. Agree on it, submit it to us, and then we'll take it from there. I don't believe you'd be able to do so. He says that some of the facts the district court found are clearly erroneous. And both of you have a position of, well, it really doesn't matter. We win anyway, but we don't know that. We haven't decided the political question issue and what it depends on. And you usually, on interlocutory 1292s, you usually don't decide that before you have all the facts for the reason that you just keep going round and round and not get the case resolved. And the overwhelming presumption is that you review final judgments, not rulings, during the course of a proceeding. And I just have some problems being there. Yes, Your Honor. And, you know, the DOJ could have filed a statement of interest, make us brief, whatever. Why didn't you all ask for one, ask the court to ask for one? We didn't think it was necessary. We did not believe there was sufficient government interest in this case to justify application of the collateral order. You didn't want to get them interested by asking the court to ask them whether they were interested, I guess. I'd done the same thing, but I'm just saying that, you know. Yes, Your Honor. I can just briefly address some of the merits in the brief, so I'll try not to take too much of the court's time. I'd like to emphasize that defendants are asking for a very broad expansion of the political question doctrine. The Supreme Court has repeatedly emphasized that the political question doctrine applies to a very narrow category of cases. But this case is not about a dispute between the legislative and executive branches or about battlefield strategy. This case is about whether the pilot on an airplane was negligent when he moved the rudder in response to a yaw damper anomaly. Defendants essentially want this court to craft a new type of jurisdictionally based immunity that would apply to government contractors as well as to the military itself. And I wish to emphasize non-waivable because this political question doctrine argument is based on lack of subject matter jurisdiction. Defendants recognize in their opening brief that the political question doctrine applies without regard to the identity of the litigants. In this particular case, the plane was spotted right before the crash flying over a populated area. It was seen over a Home Depot store. If the plane had crashed into the Home Depot instead of into the woods, then under a defendant's conception, the political question doctrine, then none of the customers in the store who were injured or killed would be able to recover from the defendants for their negligence. We simply believe that decisions regarding training exercises occurring in the United States away from a war zone would only in very, very exceptional cases implicate the political question doctrine. So you don't believe that if the case had gone to trial, if it does in fact go to trial, if a jury is asked to decide, the jury decides that the pilot or the contractor was negligent, and the jury is asked to decide what portion of this accident is the fault of the Navy for selecting the plane, which at some point, according to the facts, they were asked to select a different plane, for mandating that it fly at a speed which was above the top speed that it should have been flying at, for asking it to fly at a low altitude for training reasons, which the Navy says we wanted to see how they would be able to operate in these conditions. And you have experts that say that the speed and the altitude caused the yaw damper malfunction. You don't think that asking a jury to decide what part of the damages the Navy is responsible for, for having made what the defendants are going to argue is, I'm sorry, the defendants are going to argue were bad decisions on the choice of plane, the speed, and the route. That doesn't implicate the political question doctrine? No, Your Honor. First of all, we don't think this issue would be presented to the jury. Defendants under Florida law have the obligation to establish the negligence of absent parties. In their brief, they focus on causation issues. They have not cited any evidence from an expert or anyone else suggesting that the Navy in any way breached the standard of care, and they have to establish that by preponderance. Well, if they wanted to, okay, let's go to their obligation to establish that. So by themselves arguing and presenting to the court that the government or that the Navy was negligent, abused, breached the standard of care, would that implicate the political question doctrine? If they presented sufficient evidence. No, at that point, we do not. The Supreme Court in Gilgin v. Morgan addressed a claim for injunctive relief where the plaintiffs were seeking review of military training exercises. The Supreme Court said that injunctive relief would present a political question, but made very clear that a request for damages for negligent military training would present a different issue. And, in fact, a later case was allowed to proceed seeking damages out of that same incident. We think that a similar analysis would apply here. Courts have not. In fact, we are only aware of one case involving where the political question doctrine was applied to a military decision for a tort occurring in the United States where damages were sought. So the distinction is because it happened here in the United States as opposed to somewhere else. If, for example, they were looking at choice of plane, speed, altitude that happened, say, in Afghanistan, then the political question doctrine, you think, you say, would be implicated? It would be much more likely to be implicated. I cannot say decisively that it would apply or not. It would just depend on the circumstances of that particular case. The McMahon case in this court, for example, arose in Afghanistan. And this court held that, at least to that point, the political question doctrine did not. Well, that's also because the facts hadn't been fully established in that case. Yes, Your Honor. But the mere fact that the tort occurred in a war zone did not bar the case under the political question doctrine. We also think that the fact that the contractor was not subject to plenary military control is a very important factor. That was the primary distinguishing factor between Carmichael and the McMahon cases. And the defendants in their briefs do not argue that they were subject to the plenary control of the military when this accident happened. And they do not cite some independent action of the military that concurrently caused the tort. Defendants rely on dicta from this court's Carmichael and McMahon decisions to try to argue that issues involving military training implicate the political question doctrine. Neither of those cases arose in the context of a training exercise. Those occurred in Afghanistan and Iraq. And the authority that is cited for the language about training was this court's ACTEEP decision, which we discussed in our brief, which involved very significant foreign relations issues that are not presented in this case. And also the Supreme Court's Gilligan v. Morgan case, which I mentioned a minute ago, which we think is actually more helpful to our position than defendants because it made very clear that the military is not enslaved for tort liability, including incidents that relate to military training. There is also a history of this court and other federal courts around the country adjudicating claims brought against the military under the Federal Tort Claims Act. And we cite in our brief a handful of cases where tort claims arising out of training exercises were brought against the military. That, the court has no further questions? We don't. Thank you. Mr. Straub, five more minutes. Thank you, Your Honor. I want to go back to the jurisdictional question. I will rest on my brief with respect to the claim that or other military decisions that implicate training for combat don't implicate political question issues. I'll rely on my brief with respect to the claim that we're asking for an expansion of the doctrine. We're not. I want to readdress the concern that this court would somehow need to resolve disputed facts in order to hear this appeal under 1292B. It is not a matter of that there is no need to resolve facts. The question is whether or not there is sufficient evidence in the record that would justify submitting the issue of the Navy's negligence to the jury. The district court itself has stated that there is. While the court agrees that the Navy's choice of aircraft and speed slash altitude of the mission as well as the language it chose to include in its training manuals are the type of decisions ordinarily committed to the military and also agrees for the sake of argument that these factors may have exacerbated McDaniel's reaction to the yaw damper emergency and thus contributed to the accident. It is nonetheless certain that a jury will not be asked to consider whether these decisions were appropriate to the training mission. The court, in what I just read to you, is agreeing that there is enough evidence to submit to the jury the issues of whether the decisions with respect to aircraft, selection speed, altitude, as well as choices made about the content of the training manuals arguably contributed to the accident. That gets the comparative negligence in front of the jury without resolving facts. Only if the district court's findings about the sufficiency of the evidence are not reviewable. Because if they are reviewable, and of course I'm being rhetorical here, we know they are reviewable, then you can't take those as undisputed settled facts that the legal issue sets the top of. I think you can where there is no dispute among the parties about those things I just read off. I know, but let me put it this way. That's enough to decide the legal issue if we agree with you on the legal issue. But we don't know that at the time we're determining whether it's a proper 1292B. I think it's also enough to decide the legal issue if you disagree with me on the legal issue. Not necessarily. It depends on what we hope the law is. Well, I think the question is if the jury is going to consider these Navy decisions, are they the type of decisions that are beyond judicial review, or as the district court said, are they simply safety decisions? If the jury is going to consider these decisions. We have to predict what your claims and defenses are going to be at trial, how the evidence is going to shake out at trial. Which is precisely what the courts have done in these political question doctrine cases over and over, anticipating the defendant indicates I'm going to make this defense. Heck, some of the cases, answer gets filed, and the defendant says, I intend to rate as contributory negligence defense. Taylor is that case out of the Fourth Circuit. And based on that alone, it was enough to say that under the proportional liability system, we'd have to second-guess Navy decisions. Here, we've set out an affirmative defense under the FABRE rule in Florida, set forth the evidence indicating that these decisions have to be, the Navy's decisions have to be reviewed by the jury, that rendering the legal issue, are those decisions one, the ones that the court cannot review because they are uniquely military decisions, speed, altitude, selection of aircraft, et cetera, or are they garden variety, safety of flight issues that would apply to the flight of a Cessna 182 equally? We submit that it's not even a close question on that, but I don't believe that the court has to resolve whatever limited, disputed factual issues exist in order to address the legal issue. Either way. Thank you, County. Thank you. Take that case under submission, and we will adjourn under the usual order.